**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 18-cr-00797-1 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| JAMES SAUNDERS | ) | |

**MEMORANDUM OPINION AND ORDER**

Defendant James Saunders is an inmate currently incarcerated at Oklahoma City FTC. Like many federal prisons, Oklahoma City FTC currently houses numerous prisoners suffering from COVID-19. Saunders suffers from several medical conditions that put him at high risk for experiencing a severe illness should he contract COVID-19, including type 2 diabetes, chronic bronchitis, and heart disease. Consequently, he has filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (Dkt. No. 242.) For the reasons that follow, Saunders's motion is denied.

**BACKGROUND**

On September 4, 2019, Saunders pleaded guilty to one count of willfully engaging in the business of dealing in firearms without a license, in violation of 18 U.S.C. § 922(a)(1)(A), and one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). (*See* Dkt. Nos. 163, 164.) According to Saunders's plea agreement, Saunders and two of his co-Defendants illegally obtained firearms in Missouri and then transported those firearms to Illinois and distributed them for profit to buyers in Chicago. (Plea Agreement ¶ 6, Dkt. No. 164.) Overall, Saunders acknowledged his responsibility for five separate sales of firearms illegally transported from Missouri. At no time was Saunders licensed as a firearms dealer. In addition, at all times that Saunders possessed the firearms, he was aware of his status as a convicted felon.

Following his guilty plea, Saunders was sentenced to serve 60 months' imprisonment on January 9, 2020. (Dkt. No. 213.) His projected release date is March 3, 2023. Including the time Saunders spent in pretrial detention, he has served about 19 months of his sentence. Currently, Saunders is incarcerated at Oklahoma City FTC, which is a federal transfer center. Saunders was set to be transferred to a medical facility in Lexington, Kentucky, but that transfer was put on hold due to the COVID-19 pandemic. At the time that Saunders filed his motion, there were 33 active cases of COVID-19 among inmates at Oklahoma FTC.

Saunders, who is 48 years old, claims that he has several medical conditions that put him at risk of suffering serious complications from COVID-19. Specifically, Saunders points to his type 2 diabetes, chronic bronchitis, history of blood clots, and diabetic neuropathy. Saunders also suffers from heart disease and had a heart attack in 2016. Furthermore, Saunders's medical records reveal a hypertension diagnosis. (Def.'s Mot. for Compassionate Release, Ex. A at 38, Dkt. No. 245.) The Centers for Disease Control and Prevention ("CDC") lists type 2 diabetes, chronic bronchitis, and serious heart conditions as conditions that increase a person's risk for severe illness from COVID-19. *People Who Are at Increased Risk for Severe Illness: People with Certain Medical Conditions*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated July 17, 2020). In addition, the CDC recognizes that hypertension might put a person at increased risk for severe illness from COVID-19. *Id.* The CDC has not spoken on whether blood clots or diabetic neuropathy heighten a person's risk of severe illness. Nonetheless, the Court does recognize that some COVID-19 patients experience blood-clotting issues as a result of the virus. *E.g.*, Ralph Ellis & Andrea Kane, *Pathologist found blood clots in*

*'almost every organ' during autopsies on Covid-19 patients*, CNN (July 10, 2020, 7:03 AM), https://www.cnn.com/2020/07/10/health/what-coronavirus-autopsies-reveal/index.html.

## DISCUSSION

Once a federal district court imposes a sentence, that sentence may not be modified except in the narrow circumstances set forth in 18 U.S.C. § 3582(c). *United States v. Townsend*, 762 F.3d 641, 645 (7th Cir. 2014). Relevant here, under 18 U.S.C. § 3582(c)(1)(A)(i):

> [T]he court, upon motion of the director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . .

This section reflects a recent amendment by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018), "to allow defendants to petition courts directly for compassionate release the earlier of either fully exhausting" all administrative rights to appeal the Bureau of Prison's ("BOP") failure to bring a motion for compassionate release on the defendant's behalf or 30 days after the facility warden has received a defendant's request for compassionate release. *United States v. Reyes*, No. 04 CR 970, 2020 WL 1663129, at *1 (N.D. Ill. Apr. 3, 2020). Prior to the First Step Act, a defendant could not bring a motion for compassionate release himself but instead had to rely on the BOP to bring such a motion on his behalf. *United States v. Ebbers*, No. (S4) 02-CR-1144-3 (VEC), 2020 WL 91399, at *1 (S.D.N.Y. Jan. 8, 2020).

3

## I. Administrative Exhaustion

As an initial matter, the Government contends that Saunders has failed to satisfy § 3582(c)(1)(A)'s requirement that he either exhaust his available administrative remedies or wait until 30 days after submitting his request to the warden before filing his motion. While Saunders asserted in his original motion that he sent a request for home confinement to the warden at Oklahoma FTC after his transfer there in March or April, he did not attach any evidence of such a request. Furthermore, the Government denies that the warden ever received a request for compassionate release from Saunders. With his reply, however, Saunders has attached two email requests for compassionate release that he sent to the warden. Saunders's counsel has taken responsibility for failing to attach those requests to the original motion, as he had lost track of them among other documents related to Saunders's case. The Court has reviewed the two email requests, dated April 19, 2020 and May 18, 2020. It concludes that Saunders unambiguously requested that the warden grant him compassionate release due to the presence of COVID-19 at the prison and his medical conditions. The Government has not given this Court any reason to doubt the authenticity or sufficiency of those requests. And because each request was submitted at least 30 days prior to Saunders filing the present motion, the Court finds that Saunders has exhausted his administrative remedies.

## II. Extraordinary and Compelling Reasons

A sentence reduction under § 3582(c)(1)(A)(i) may only be granted when supported by "extraordinary and compelling reasons." The statute does not define what constitutes "extraordinary and compelling reasons," but instead states that the sentence must comply with "applicable policy statements issued by the Sentencing Commission" and "directs the Sentencing Commission to promulgate 'the criteria to be applied and a list of specific' extraordinary and

4

compelling examples." *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681 (N.D. Cal. 2019) (quoting 18 U.S.C § 3582(c)(1)(A); 28 U.S.C. § 994(t)). Those criteria are set forth in United States Sentencing Guidelines ("USSG" or "Guidelines") § 1B1.13 and the Sentencing Commission has limited "extraordinary and compelling reasons" to the four scenarios set forth in the commentary. *Id.* "The specific circumstances broadly cover compassionate release[] based on the defendant's medical condition, age, and family circumstances." *United States v. Cardena*, No. 09-CR-332-11, 2020 WL 2719643, at *3 (N.D. Ill. May 15, 2020).

Here, the Government does not dispute that Saunders has demonstrated extraordinary and compelling reasons for his release. Specifically, it agrees that Saunders's type 2 diabetes constitutes a "serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG § 1B1.13 n.1(A)(ii). This is because Saunders's "ability to provide self-care against serious injury or death as a result of COVID-19 is substantially diminished within the environment of a correctional facility, by the medical condition itself." (Gov.'s Resp. to Mot. for Compassionate Release at 26, Dkt. No. 246.)

The Court agrees with the Government that Saunders's type 2 diabetes, chronic bronchitis, heart disease, and hypertension—in conjunction with the presence of COVID-19 in Oklahoma City FTC—present an extraordinary and compelling reason for his release. And while the CDC has not spoken to whether a person's history of blood clots heightens their risk of severe illness from COVID-19, the Court finds that there is some evidence that it is a risk factor. Taken together, these circumstances establish that Saunders's current medical condition puts him at serious risk of a bad outcome should he contract COVID-19. Given the presence of active COVID-19 cases at Oklahoma City FTC, Saunders has shown that he faces a real risk of

contracting the virus. For that reason, the Court concludes that Saunders has established extraordinary and compelling reasons for a reduction of his sentence.

### III. Sentencing Factors Under § 3553(a)

This Court's finding that Saunders has presented an extraordinary and compelling reason to reduce his sentence does not automatically mean that compassionate release is appropriate. Rather, the Court must also consider whether the 18 U.S.C. § 3553(a) factors support the requested sentence reduction. The Government contends that the balance of the § 3553(a) factors weigh in favor of keeping Saunders incarcerated. The Court agrees.

First, Saunders's offense was extremely serious. Indeed, it would have been a serious offense for a convicted felon such as Saunders just to possess a firearm. But making matters worse, Saunders illegally sold several firearms to people he admittedly knew intended to use or dispose of the weapons unlawfully. (Plea Agreement ¶ 6.) Such unlawful trafficking of firearms substantially contributes to the frequent shootings and other crimes that occur across Chicago. *See* City of Chicago, Office of the Mayor, *Gun Trace Report 2017* at 8, https://www.chicago.gov/content/dam/city/depts/mayor/Press%20Room/Press%20Releases/2017/October/GTR2017.pdf ("[T]he majority of illegally used or possessed firearms recovered in Chicago are traced back to states with less regulation over firearms . . . ."). Accordingly, at his sentencing, the Court determined that Saunders's unlawful conduct warranted a substantial 60-month sentence. Yet, at this time, Saunders has served only 19 months of his sentence. Granting Saunders such a substantial reduction of his sentence would not accurately reflect the gravity of the crimes to which he pleaded guilty.

In response, Saunders emphasizes the physical and emotional abuse he endured as a child as well as his minimal prior criminal history, as he was found to be in criminal history category I

6

under the Guidelines, the lowest category. But the Court accounted for those factors when it imposed a sentence below the Guidelines' recommended range of 70 to 87 months' imprisonment. The only thing that has changed since the Court issued its sentence is the COVID-19 pandemic. "However, the COVID-19 pandemic does not warrant the release of every federal prisoner with health conditions that makes him more susceptible to the disease." *United States v. Collins*, No. 14-cr-30038, 2020 WL 2301217, at *2 (C.D. Ill. May 8, 2020).

The Court certainly does not mean to minimize the serious threat that Saunders faces from the virus. At the same time, Saunders has not presented any evidence that the BOP is unable to control the spread of the virus at Oklahoma City FTC. Indeed, at the time that Saunders filed his motion, there were 33 active cases of COVID-19 among inmates at the prison. Since that time, the number has reduced to 28 active cases. *COVID-19 Coronavirus*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited July 23, 2020). Nor does Saunders allege that the conditions at Oklahoma City FTC make controlling the spread of the virus difficult or impossible.

In sum, although the Court recognizes that Saunders's medical conditions put him at risk of severe illness should he contract COVID-19, the § 3553(a) factors do not support reducing his sentence. For that reason, Saunders's motion for compassionate release is denied. However, under § 3553(a)(2)(D), the Court is instructed to consider "the need for the sentence imposed . . . to provide the defendant with needed . . . medical care . . . in the most effective manner." In recognition of Saunders's medical issues, the Court recommends that the BOP transfer Saunders to an appropriate medical facility. Indeed, at the time the Court sentenced Saunders, it recommended that he be evaluated to determine whether designation to a BOP medical facility would be appropriate. The COVID-19 pandemic reinforces the Court's belief that placing Saunders in a BOP medical facility is appropriate. Unfortunately, some risk of contracting the

virus is inescapable no matter where Saunders is imprisoned. However, the Court believes that a medical facility will be better equipped to treat a person in Saunders's condition should he contract COVID-19. In his *pro se* motion, Saunders stated that he was in the process of being transferred to a medical facility in Lexington, Kentucky, but his transfer was indefinitely placed on hold due to the pandemic. Pursuant to 18 U.S.C. § 3621(b)(4)(B), the Court recommends that the BOP move forward with transferring Saunders to a medical facility.

## CONCLUSION

For the foregoing reasons, Saunders's motion for compassionate release (Dkt. No. 242) is denied.

ENTERED:

Dated: July 29, 2020

_____
Andrea R. Wood
United States District Judge